NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000123
04-JUN-2013
10:25 AM**

NO. CAAP-10-0000123

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KAWA SALAS, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 08-1-443)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Kawa Salas (Salas) appeals from the Judgment of Conviction and Sentence entered on October 28, 2010 by the Circuit Court of the Third Circuit (circuit court)[1] convicting him of one count of Robbery in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 708-841(1)(b) (Supp. 2012).[2]

---

[1]  The Honorable Glenn S. Hara presided.  By order of the circuit court, Salas's sentence has been stayed pending this appeal.

[2]  HRS § 708-841(1)(b) states, in relevant part:

§708-841 **Robbery in the second degree.**  (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
. . .
(b)  The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the

On appeal, Salas challenges his conviction by raising the following points of error: (1) the circuit court erred in denying his Motion to Suppress the Pre-Identification of Defendants (Motion to Suppress); (2) the circuit court's findings of facts (FOFs) 13, 16, 17, 18, 19, 31, 33 and conclusion of law (COL) 1 in denying the Motion to Suppress were erroneous because they identified Salas as one of the criminals before he was convicted; (3) the circuit court abused its discretion in denying Salas's Motion to Dismiss Indictment (Motion to Dismiss Indictment); (4) the circuit court plainly erred in failing to instruct the jury on the defense of abandonment and renunciation; and (5) Salas was rendered ineffective assistance of counsel.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Salas's points of error as follows[3]:

(1) In his first point of error, Salas contends that the circuit court erred in denying his Motion to Suppress[4] because the court's findings of fact (FOFs) were "insufficient to satisfy the *[t]otality of the [c]ircumstances* factors required by Neil v. Biggers, 409 U.[S]. 188, 197, [ ] (1972) because [the FOFs] did not address the initial on-scene identification by the

property[.]

[3] We note that the opening brief fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28. In violation of HRAP Rule 28(b)(4), Salas's asserted points of error fail to state where in the record alleged errors were objected to or the manner in which the alleged errors were brought to the attention of the circuit court. Because of this court's preference to address cases on the merits if possible, we will consider Salas's points of error to the extent they can be discerned. However, Salas's counsel, **Joy A. San Buenaventura**, is put on notice and cautioned that future non-compliance with HRAP Rule 28 may result in sanctions.

[4] In reviewing the circuit court's denial of Salas's motion to suppress, we consider both the evidence presented at the hearing on the motion and at trial. State v. Vinuya, 96 Hawai'i 472, 481, 32 P.3d 116, 125 (App. 2001).

2

[complaining witnesses], instead it ambiguously supported its denial by referring to the [complaining witnesses'] subsequent on-scene identification and more subsequent photo line-up identifications as being reliable and non-suggestive."[5]

Salas appears to argue that, because there was testimony as to two possible points at which he was identified at the scene, one when he was handcuffed and sitting next to co-defendant John Iopa (Iopa) and another when Salas was walked out of the area, the circuit court erred by not specifically addressing each on-scene identification separately. Salas does not contest, however, the circuit court's findings that Salas was identified by the complaining witnesses independent of any procedure orchestrated by the police. This point of error thus lacks merit.

Questions regarding the suggestiveness and reliability of a pre-trial identification are questions of law reviewed *de novo* on appeal. State v. Okumura, 78 Hawai'i 383, 391, 894 P.2d 80, 88 (1995), *abrogated on other grounds by* State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012).

> When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pre-trial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of attention, and the elapsed time, the witness's identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury.

---

[5] In the argument section of his opening brief, Salas also argues that the circuit court erred in failing to suppress the pre-trial identification of him because he was improperly arrested at the scene without a warrant. Salas did not raise this argument before the circuit court and therefore it was waived. State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal."); State v. Kalani, 3 Haw. App. 334, 649 P.2d 1188 (1982) (holding that the legality of the defendant's arrest would not be considered on appeal because the issue was not properly raised in the trial court).

State v. Araki, 82 Hawai'i 474, 484, 923 P.2d 891, 901 (1996)

(quoting Okumura, 78 Hawai'i at 391, 894 P.2d at 88). However,

> answering these questions involves determinations of fact by the court. Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the "clearly erroneous" standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

Okumura, 78 Hawai'i at 392, 894 P.2d at 89 (citations and internal quotation marks omitted).

After multiple hearings on the Motion to Suppress, the circuit court made detailed FOFs regarding the incident at the campsite, the complaining witnesses' interaction with police after the incident, and the circumstances when three of the complaining witnesses -- Scott Desa (Desa), Lucas Mead (L. Mead), and Benjamin Mead (B. Mead) -- returned to the campsite and identified Iopa and Salas as having been involved in earlier confronting and accosting the complaining witnesses. The circuit court's findings expressly state that Desa, L. Mead, and B. Mead went back to the campsite to pack up and collect their belongings, and that their focus was on making sure that they had all of their camping gear. The circuit court further found that, upon hearing Iopa speaking and recognizing Iopa and Salas, Desa, L. Mead, and B. Mead approached police "of their own initiative" and identified Iopa and Salas as being the individuals who had confronted the complaining witnesses earlier. Moreover, in FOF 38, the circuit court found:

> 38.  The on scene identification of Defendant Salas and Defendant Iopa was made independent of any officiated identification procedure. Desa, L. Mead and B. Mead returned to the scene to collect and catalogue their possessions and not for the purposes of taking part in a police orchestrated identification procedure. There was no coercion on the part of the police, or any effort to influence or to direct the identification of the Defendants by the victims. Desa, L. Mead and B. Mead each made individual identifications based on

> their respective perceptions and independent
> recollection of events. There is no evidence of
> collusions among the victims to identify Defendant
> Iopa and Defendant Salas as participants in the
> confrontation. There was no discussion between
> victims to confirm and/or corroborate the
> identification.

Salas does not challenge FOF 38 or any of the circuit court's FOFs indicating that the complaining witnesses initiated the identification of Salas. Unchallenged findings of fact are binding on this court. State v. Rapozo, 123 Hawai'i 329, 334 n.4, 235 P.3d 325, 330 n.4 (2010).

Furthermore, an out-of-court identification should only be suppressed where the identification procedure was impermissibly suggestive and "gave rise to a very substantial likelihood of irreparable misrepresentation." State v. Malani, 59 Haw. 167, 170, 578 P.2d 236, 238 (1978) (block quote format altered; citations omitted); see also Neil v. Biggers, 409 U.S. 188, 198 (1972). Otherwise, "the weight of the identification testimony and the credibility of the witnesses [are] for the jury to determine." Araki, 82 Hawai'i at 486, 923 P.2d at 903 (quoting State v. Masaniai, 63 Haw. 354, 365, 628 P.2d 1018, 1026 (1981)). Based on our review of the record, although the testimony by the complaining witnesses and police officers as to the on-scene identification of Salas varies somewhat, substantial evidence exists to support the determination that the identification of Salas was not the result of suggestive procedures or actions employed by the police.

Therefore, the circuit court did not err in concluding that the on-scene identification of Salas was not suggestive. As such, and contrary to Salas's assertion, the circuit court was not required to reach the question of the reliability of the

identifications under the totality of the circumstances. See State v. Mitake, 64 Haw. 217, 221, 638 P.2d 324, 327 (1981).[6]

(2) In his second point of error, Salas challenges the following findings of fact and conclusions of law on the grounds that they are clearly erroneous because: they identify Iopa and Salas as the criminals involved in the incident before they were convicted; the victims did not identify Iopa and Salas on-scene by name; and the court erroneously found that L. Mead, a victim, identified Salas on-scene.

<u>FINDINGS OF FACT</u>

. . .

13. Desa then opened his tent and looked out to the direction of the noise and saw the males coming towards his tent and Desa saw lights shining in his direction. Headlights from at least one vehicle were shining directly in the victims' direction. Desa, who sat at the front of his tent for the duration of the confrontation, was afforded an unobstructed view of the Defendants Salas and Iopa, both of whom were illuminated by the headlights during the verbal confrontation with the Defendants and others, which lasted approximately 15 minutes.

. . .

16. A second male standing in front of Desa's tent, later identified as Defendant Salas, was not as vocal, but was aggressively posturing himself as if he wanted to fight. Defendant Salas was making blowing sounds from his mouth. Defendant Salas was 2-3 feet away from Desa. L. Mead described Defendant Salas as "shadow boxing" and making grunting noises like "woof". B. Mead described Defendant Salas as wearing lighter

---

[6] Nonetheless, and contrary to Salas's assertion, the circuit court did consider and address the reliability of the on-scene identifications. In this regard, the circuit court made detailed findings as to the complaining witnesses' ability to see Iopa and Salas up close while Iopa and Salas were threatening the complaining witnesses by their tents, the elapsed time of the confrontation, the attention of the complaining witnesses toward Iopa and Salas during the confrontation, and the time period before the on-scene identifications of Iopa and Salas. The circuit court then concluded that "[e]ven if the on-scene identification was a 'show up' and if it was impermissibly suggestive, it was nonetheless reliable under the totality of the circumstances." From our own review of the testimony and the record, we agree that the on-scene identification of Salas was reliable under the totality of the circumstances.

shorts and having wiry and poofy hair and getting within a couple of feet of him.

17. Desa had his attention focused on Defendants Salas and Iopa.

18. About 7 feet behind Defendants Salas and Iopa were other males, one with a baseball bat or wooden object resembling a baseball bat.

19. The confrontation between the victims and Defendant Salas and Iopa lasted approximately 15 minutes.

. . .

31. After hearing Defendant Iopa, who was speaking almost continuously after the police arrived, and upon recognizing Defendants Iopa and Salas, Desa, L. Mead and B. Mead approached police and identified Defendant Iopa as the vocal male, and Defendant Salas as the shadow boxer who was in front of the victims' tents during the earlier confrontation.

. . .

33. At the camp area, Desa, L. Mead, and B. Mead also identified Defendant Salas who was at the time located next to Defendant Iopa, and was only wearing a light colored surf shorts, without a shirt, and had longer hair, as the male bouncing around taking fighting stances and breathing blowing sounds who confronted them in front of Desa's tent earlier.

. . .

CONCLUSIONS OF LAW

1. The on-scene identification of Defendant Iopa and Defendant Salas on September 1, 2008 was made spontaneously by Desa, B. Mead, and L. Mead, and not as a result of any officiated identification. There was no "show up".

The FOFs are not clearly erroneous and COL 1 is not in error. Use of the defendants' names merely are a means to indicate that these individuals were identified by the complaining witnesses, not to suggest that the victims actually identified the defendants by their names. Further, although L. Mead testified that he identified only Iopa at the scene, the record reflects that other witnesses testified that L. Mead did indeed identify Salas on-scene. Based on the testimony presented, the circuit

7

court, as fact-finder, was within its discretion to assess the credibility of witnesses, weigh the evidence, and accept or reject any witness's testimony in whole or in part. See State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996). Therefore, these findings were not clearly erroneous for identifying Salas by name.

(3) Salas contends that the circuit court abused its discretion in denying his Motion to Dismiss Indictment because the prosecution failed to present clearly exculpatory evidence to the grand jury.[7] "A circuit court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion." State v. Akau, 118 Hawai'i 44, 51, 185 P.3d 229, 236 (2008) (citation and brackets omitted); see also State v. Wong, 97 Hawai'i 512, 517, 40 P.3d 914, 919 (2002).

With regard to claims of prosecutorial misconduct at a grand jury proceeding, the Hawai'i Supreme Court has stated that

> [a] grand jury proceeding is not adversary in nature. An application of this principle is found in the rule that an indictment may not be attacked on the ground of the incompetency of the evidence considered by the grand jury, where prosecutorial misconduct is not involved. The function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to

---

[7] With regard to Salas' Motion to Dismiss, the trial court concluded in relevant part that:

7.  There was no prosecutorial misconduct at the Grand Jury proceedings.

8.  The prosecutor did not fail to present clearly exculpatory evidence at the Grand Jury that would warrant dismissal. Evidence that Damien Bentosino identified Kameron Wilbourn and Kameron Wilbourne [sic] and Raylan Torres-Acia as being responsible parties is not clearly exculpatory in light of the live testimony of the victims at the Grand Jury positively identifying Defendant Salas and Defendant Iopa as participants in the confrontation with the victims in front of Desa's tent on August 31, 2008/September 1, 2008.

> determine that the prosecution's case is supported by competent evidence.
>
> On the other hand, an indictment that is the result of *prosecutorial misconduct or other circumstances which prevent the exercise of fairness and impartiality by the grand jury* may be successfully attacked.

State v. Chong, 86 Hawai'i 282, 288-89, 949 P.2d 122, 128-29 (1997) (internal citations omitted). The Hawai'i Supreme Court has

> rejected an approach to claims of prosecutorial misconduct that would require the prosecutor to put before the grand jury any and all evidence that might tend to exculpate the defendant, or that would merely tend to negate guilt, and has concluded <u>a court should dismiss an indictment only when the prosecutor failed to present evidence that clearly would have negated guilt or presented evidence that would undermine the authority of the grand jury to act at all</u>.

Wong, 97 Hawai'i at 526, 40 P.3d at 928 (internal citations, quotation marks, and brackets omitted; emphasis added). The focus of the court's inquiry is "the prejudicial character of the prosecutor's conduct[,]" and must not involve passing upon the credibility of grand jury witnesses nor upon the competency or adequacy of the evidence adduced. Chong, 86 Hawai'i at 289 n.3, 949 P.2d at 129 n.3 (citation omitted); see also State v. Griffin, 126 Hawai'i 40, 52, 266 P.3d 448, 460 (App. 2011).

In this case, Salas fails to meet his burden of proving prosecutorial misconduct. See Griffin, 126 Hawai'i at 53, 266 P.3d at 461. The evidence Salas argues should have been presented included an allegedly contrary description by Desa of his assailant's hair, that the photo line-ups did not include photos of others who confessed to being involved, and that the confrontation ended when someone said to "leave them alone" and Iopa shook hands with Desa and B. Mead. This evidence would not "clearly negate" Salas's guilt. First, there was evidence presented to the grand jury identifying Salas as one of the assailants. Second, given the charge of accomplice liability against Salas, evidence that males other than Salas and Iopa were

involved in the incident would not clearly negate Salas's guilt. Third, evidence that Iopa shook hands with Desa and B. Mead also would not clearly negate Salas's guilt. Therefore, the circuit court did not abuse its discretion in concluding that prosecutorial misconduct did not occur and thus in denying the Motion to Dismiss Indictment.

(3) Salas's next point of error is that the circuit court erred in failing to instruct the jury on the defense of renunciation and abandonment pursuant to HRS § 705-530(1) (1993 Repl.) and HRS § 702-224 (1993 Repl.). While before the circuit court, Salas did not proffer such jury instructions or object to the jury instructions in this regard.

"With respect to jury instructions, it is the duty of the trial court to ensure that the jury is properly instructed." State v. Kikuta, 125 Hawai'i 78, 90, 253 P.3d 639, 651 (2011). There is "a presumption that unobjected-to jury instructions are correct[.]" State v. Nichols, 111 Hawai'i 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006). "[I]f the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." Id. (citation, internal quotation mark, and emphasis omitted).

Salas was charged with Robbery in the First Degree and accomplice liability. The circuit court instructed the jury on the offense of Robbery in the First Degree, and the lesser-included offenses of Robbery in the Second Degree, Attempted Theft in the Fourth Degree, and Theft in the Fourth Degree. Salas argues that the circuit court erred in failing to instruct the jury on renunciation and abandonment pursuant to HRS § 705-530(1) and HRS § 702-224.

10

HRS § 705-530(1) states, in relevant part:

> §705-530. **Renunciation of attempt, solicitation, or conspiracy; affirmative defense.** (1) <u>In a prosecution for criminal attempt</u>, it is an affirmative defense that the defendant, under circumstances manifesting a voluntary and complete renunciation of the defendant's criminal intent, gave timely warning to law-enforcement authorities or otherwise made a reasonable effort to prevent the conduct or result which is the object of the attempt.

(Emphasis added.) As the statute indicates, this defense is specifically tied to prosecutions for criminal attempt. The commentary to HRS § 705-530(1) notes that renunciation is an affirmative defense to inchoate crimes,[8] and that "[r]enunciation in all three inchoate situations requires that the defendant either give timely warning to the police, or make a reasonable effort <u>to prevent the culmination of the crime</u>." HRS § 705-530(1) cmt. (1993 Repl.) (emphasis added).

Here, Salas was convicted of Robbery in the Second Degree in violation of HRS § 708-841(1)(b), which is a completed offense "if, in the course of committing theft or non-consensual taking of a motor vehicle: . . . (b) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property[.]" Moreover,

> [a]n act shall be deemed "in the course of committing a theft or non-consensual taking of a motor vehicle" if it occurs in an attempt to commit theft or non-consensual taking of a motor vehicle, in the commission of theft or non-consensual taking of a motor vehicle, or in the flight after the attempt or commission.

HRS § 708-842 (Supp. 2012). Hence, in this case, once Salas was "in the course of committing a theft" and threatened the imminent use of force against the complaining witnesses with intent to

---

[8] "Inchoate" is defined in Black's Law Dictionary as "[p]artially completed or imperfectly formed; just begun." <u>Black's Law Dictionary</u> 830 (9th ed. 2009). "The common law has given birth to three general offences which are usually termed 'inchoate' or 'preliminary' crimes - attempt, conspiracy, and incitement." <u>Id.</u>

11

compel acquiescence to the taking of property, the culmination of Robbery in the Second Degree had occurred. Regardless of any evidence that he thereafter voluntarily left the scene without taking any property, renunciation under HRS § 705-530(1) is not applicable because the crime was already completed. Moreover, although the jury was instructed on Attempted Theft in the Fourth Degree, the jury convicted Salas on Robbery in the Second Degree and thus the circuit court did not plainly err by not giving a renunciation instruction related to the Attempted Theft in the Fourth Degree offense. See State v. Haanio, 94 Hawai'i 405, 415-16, 16 P.3d 246, 256-57 (2001).

With regard to Salas's argument under HRS § 702-224, that statute states, in relevant part:

> Unless otherwise provided by this Code or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:
>
> . . .
>
> (3) He terminates his complicity prior to the commission of the offense and:
>
> > (a)  Wholly deprives his complicity of effectiveness in the commission of the offense; or
> >
> > (b)  Gives timely warning to the law enforcement authorities or otherwise makes reasonable effort to prevent the commission of the offense.

(Emphasis added.) As discussed above, the commission of the crime was completed by the time Salas left without taking any property. Thus a jury instruction pursuant to HRS § 702-224 was not warranted.

(4) In his final point of error, Salas asserts that his trial counsel was ineffective for the following reasons: (a) counsel should have moved for suppression of the pre-trial identification of Salas as a fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963), because his warrantless arrest lacked probable cause; (b) counsel failed to question a trial witness, Christine Wilbourne; (c) counsel failed

12

to present to the jury a DVD interview by Officer James Gusman (Officer Gusman) of Rylan Torres-Acia or Rylan Torres-Acia's confession; and (d) counsel failed to proffer a jury instruction on the defense of renunciation and abandonment.

Upon our review of the record, we conclude that Salas did not meet his burden of demonstrating (1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and that (2) such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. See State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980) (citations omitted).

With regard to Salas's argument that his counsel should have moved for suppression of the pre-trial identification because the police did not have sufficient probable cause to effect his warrantless arrest, Salas does not explain how asserting he was improperly arrested would have necessarily resulted in suppression of his pre-trial identification. He states obliquely in his reply brief that upon his initial arrest he was woken up and hand-cuffed next to Iopa, and we thus infer his argument to be that by being hand-cuffed next to Iopa without probable cause, he was improperly identified by the complaining witnesses. The record is not sufficiently developed to determine if there was probable cause for Salas's arrest and whether the pre-trial identification of Salas was the fruit of an unlawful arrest. On the existing record, Salas fails to establish ineffective assistance of counsel in this regard. However, because Salas did not obtain new counsel until after the circuit court had denied his motion for judgment of acquittal and/or for new trial, we deny his ineffective assistance of counsel claim on this basis without prejudice to a petition pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40.

13

Next, we also reject Salas's arguments that trial counsel was ineffective for: failing to question trial witness Christine Wilbourne; for failing to present a DVD interview by Officer Gusman of Rylan Torres-Acia; and for failing to present Rylan Torres-Acia's confession. As to each of these claims, Salas contends that evidence vindicating him would have been adduced if his trial counsel had pursued these areas. However, Salas's assertions of what the evidence would have been are not supported by any affidavits or sworn statements. "Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). See also State v. Fukusaku, 85 Hawai'i 462, 481, 946 P.2d 32, 51 (1997); State v. Aplaca, 74 Hawai'i 54, 68-69, 837 P.2d 1298, 1306 (1992). Moreover, "matters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight." Richie, 88 Hawai'i at 39, 960 P.2d at 1247 (1998) (internal quotation marks and citations omitted). The extent to which trial counsel chooses to question a witness, if at all, or to introduce certain evidence, is generally a tactical decision, which should not be questioned in hindsight. See State v. Silva, 75 Haw. 419, 441, 864 P.2d 583, 593 (1993) (finding that although eliciting certain testimony may have strengthened the defendant's case, this error did not rise to the level of ineffective assistance of counsel); Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48. Again, however, because new counsel did not have an opportunity to develop the record as to these issues, we deny Salas's ineffective assistance of counsel claim on these grounds without prejudice to an HRPP Rule 40 petition.

14

Finally, trial counsel was not ineffective for failing to offer jury instructions on the defense of renunciation and abandonment pursuant to HRS § 705-530(1) and HRS § 702-224. As discussed above, these defenses are inapplicable given the circumstances of this case.

Therefore,

IT IS HEREBY ORDERED THAT the Judgment of Conviction and Sentence, filed on October 28, 2010 in the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, June 4, 2013.

On the briefs:

Joy A. San Buenaventura
for Defendant-Appellant

Darien W.L.C. Nagata
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

15